UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| EARL DAVID DOWTY, | * | CIV 12-5039-RAL |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | ORDER GRANTING LEAVE |
| | * | TO PROCEED IN FORMA |
| SIXTH AND SEVENTH CIRCUIT | * | PAUPERIS, DENYING MOTIONS, |
| COURTS, CITY OF HOT SPRINGS, | * | AND DISMISSING CASE |
| COUNTY OF FALL RIVER, | * | |
| DEPARTMENT OF SOCIAL SERVICES | * | |
| OF SOUTH DAKOTA, | * | |
| STATE OF SOUTH DAKOTA, | * | |
| MARTY JACKLY, Attorney General; | * | |
| DENNIS DAUGAARD, Governor; and | * | |
| JEFF W. DAVIS, Presiding Judge Seventh | * | |
| Circuit; | * | |
| | * | |
| Defendants. | * | |

Plaintiff Earl David Dowty files this—his eighteenth civil lawsuit—against the Sixth and Seventh Judicial Circuit, City of Hot Springs, Department of Social Services, and State of South Dakota, including its attorney general Marty Jackley, governor Dennis Daugaard, and state court judge Jeff W. Davis. Doc. 1. There is little in Dowty's Complaint that this Court has not already seen as parts of his claims in his many previous lawsuits. Count I involves the Due Process Clause and the Ft. Laramie Treaty of 1868 in alleging that the Defendants are engaged in treason and genocide, presumably because Dowty as a Native American deems himself to be above, beyond and immune from any state authority. This Court has dismissed Dowty's claims on this assertion previously. See 11-civ-3002-RAL, 12-civ-3003-RAL, 12-civ-4016-RAL, 11-civ-5101-RAL. County II involves similar grounds and focuses on his child support debt, a claim that this Court addressed in dismissing Dowty's claims in 11-civ-5101-RAL. Count III of the Complaint largely repeats the contentions of Count I.

This Court is familiar with Dowty based on his numerous prior federal cases. Dowty was indicted on charges before this Court of being a felon in possession of firearm, possession of stolen firearm, and aiding and abetting in United States v. Richards et al, 11-cr-30008-RAL. Dowty also was

1

indicted before this Court on two counts of felon in possession of a firearm in <u>United States v. Dowty</u>, 11-cr-30026-RAL. In addition, Dowty was indicted before this Court on fraud in connection with access device in <u>United States v. Dowty</u>, 11-cr-30027-RAL. As part of a plea agreement, Dowty pleaded guilty to one count of felon in possession of a firearm in 11-cr-30026-RAL, with the other federal charges being dismissed. This Court sentenced Dowty to a sentence of 120 months in the custody of the Bureau of Prisons, with supervised release of three years thereafter and responsibility for restitution and a special assessment. <u>United States v. Dowty</u>, 11-cr-30026-RAL, Doc. 38.

Dowty faced those federal charges following a spree of burglaries not within Indian country. During one of the burglaries, a homeowner interrupted the burglary and observed two men, one of whom fit Dowty's description, within his residence. The homeowner attempted to flee, but was shot as he fled. Dowty is facing state court charges in Mellette County, South Dakota, arising out of the burglaries and shooting of the homeowner, all of which occurred outside of Indian country. Dowty presently is in state court custody awaiting trial on the state charges.

After receiving his federal court sentence and then being transferred to state court custody to face the pending state charges, Dowty has filed a number of civil cases. This Court has screened and allowed Dowty to proceed with two cases: 1) a claim in 11-civ-3025-RAL alleging that the person responsible for his state custody—Sheriff Derris Waukazoo—has been deliberately indifferent to Dowty's serious medical needs; and 2) a claim in 12-civ-4002-RAL alleging that certain law enforcement officers violated Dowty's Fourth Amendment rights under <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).

This Court has screened and dismissed claims in a civil case that Dowty filed as 12-civ-3002-RAL against the State of South Dakota, prosecutor Michael Strain, Sheriff Derris Waukazoo, and state court judge Mark Barnett. 12-civ-3002-RAL, Doc. 6. In 12-civ-3002-RAL, Dowty claimed that the Eleventh and Fourteenth Amendments of the United States Constitution, as well as the 1868 Treaty of Fort Laramie deprived state officials of jurisdiction over him and the offenses that he allegedly committed. This Court explained why Dowty's claims in 12-civ-3002-RAL did not survive initial screening and why Dowty had no claim against the prosecuting attorney or the state court judge. 12-civ-3002-RAL, Doc. 6. Dowty then appealed to the United States Court of Appeals for the Eighth Circuit, which recently summarily affirmed this Court's dismissal of Dowty's claims. 12-civ-3002-RAL, Doc. 20.

This Court also screened and dismissed a civil case that Dowty brought against Sheriff Derris Waukazoo, the Attorney General for the State of South Dakota, and Lori Kalenda, as 12-civ-3003-RAL. Again, this Court explained why Dowty did not have viable claims. 12-civ-3003-RAL, Doc. 5. Again, Dowty appealed to the United States Court of Appeals for the Eighth Circuit, which recently summarily affirmed this Court's rulings and dismissal of Dowty's claims in 12-civ-3003-RAL. 12-civ-3003-RAL, Doc. 19.

In addition to this case and the other cases mentioned above, Dowty also filed civil cases 12-civ-4016-RAL and 11-civ-5101-RAL. This Court screened and dismissed the Complaints in those cases as frivolous. In short, this Court in the last year has dismissed four prior civil cases filed by Dowty as meritless. Dowty's history of meritless civil filings goes back many years. Counting the civil cases referenced above, Dowty has been a plaintiff in eighteen different civil cases. See 01-civ-4037-LLP, 01-civ-4107-LLP, 02-civ-4264-RHB, 04-civ-4192-LLP, 04-civ-5028-KES, 04-civ-5068-RHB, 04-civ-5109-AWB, 05-civ-4083-LLP, 05-civ-4120-LLP, 05-civ-5109-AWB, 05-civ-5076-AWB. This Court takes judicial notice under Rule 201 of the Federal Rules of Evidence of the filings in all of the above-mentioned cases.

This Court is required to "screen" complaints that seek redress from governmental entities or employees. 28 U.S.C. § 1915A. This Court is required to dismiss claims that are frivolous, malicious, or fail to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b)(1). This Court, at this stage of the case, assumes as true all well-pleaded facts in the Complaint. Cole v. Homier Distrib. Co., Inc., 599 F.3d 856, 861 (8th Cir. 2010). This Court construes pro se complaints liberally, but even a pro se complaint must contain "specific facts supporting its conclusions." Allen v. Purkett, 5 F.3d 1151, 1153 (8th Cir. 1993). A complaint that is merely vague or conclusory in its allegations or contains unsupported generalizations is subject to dismissal. Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1985). Of course, "[c]ivil rights pleadings should be construed liberally." Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995).

As in 11-civ-5101-RAL, Dowty sues the State of South Dakota because he contests the jurisdiction of the State to require him to pay court-ordered child support. Dowty, who is a Native American Indian, asserts that the United States Constitution by giving Congress the power to regulate commerce with Indian tribes deprives the state court of jurisdiction and that the 1851 and 1868 Treaties of Fort Laramie place protection of the Tribe of which Dowty is a member with the federal

government. Dowty alleges that his daughter now is over 18 years of age and was born and has lived in Indian country, so he ought to be relieved of responsibility to pay the approximately $17,000.00 he owes in past-due child support. Doc. 1.

The defendant that Dowty has named—the State of South Dakota—is a sovereign entity that enjoys sovereign immunity, as do the state agencies—the Department of Social Services and the Sixth and Seventh Judicial Circuit—that Dowty names. Edelman v. Jordan, 415 U.S. 651 (1974) (holding that the Eleventh Amendment bars suit against a state by its own citizens); Florida Dept. of Health & Rehabilitative Services v. Florida Nursing Homes Assn., 450 U.S. 147 (1982) (holding an agency of the state is part of the state for purposes of the Eleventh Amendment); Ford Motor Co. v. Department of Treasury, 323 U.S. 459 (1945) (same). Moreover, to contest the jurisdiction of the state court over Dowty or the amount of child support, Dowty should have filed a motion to dismiss for lack of jurisdiction in the state court proceeding, appealed to the Supreme Court of South Dakota if he lost on his challenge to state jurisdiction, and then petitioned for a writ of certiorari to the Supreme Court of the United States if he were to have lost before the Supreme Court of South Dakota. Dowty cannot collaterally attack jurisdiction in a state court matter, apparently years after the fact, by filing this federal court case now. Congress has given full faith and credit to state child support orders under 28 U.S.C. § 1738B. Congress has not established federal court jurisdiction to collaterally attack state child support orders years after the fact for being based on an absence of jurisdiction.

Dowty's claims against any state court judge, such as judge Jeff Davis, likewise fail. South Dakota circuit courts are courts of general jurisdiction. Article V, § 5 of the South Dakota Constitution provides, in part:

> The circuit courts have original jurisdiction in all cases except as to any limited original jurisdiction granted to other courts by the Legislature. The circuit courts and judges thereof have the power to issue, hear and determine all original and remedial writs. The circuit courts have such appellate jurisdiction as may be provided by law.

Thus, state court judges have subject matter jurisdiction over child support cases.

The doctrine of judicial immunity is well-established. "Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction [.]" Pierson v. Ray, 386 U.S. 547, 553-54 (1967). Judicial immunity is an immunity from suit, not just from the ultimate assessment of damages. Mireles v. Waco, 502

U.S. 9, 11 (1991) (per curiam). "A judge is absolutely immune from liability if (1) the judge had subject matter jurisdiction, and (2) the acts complained of were judicial acts." Childs v. Reynoldson, 777 F.2d 1305, 1306 (8th Cir. 1985) (internal citations omitted). Dowty's Complaint sues Judge Davis in his capacity as a circuit court judge. The purported constitutional violations Dowty complains of relate to Dowty's state child support case for which Judge Davis has subject matter jurisdiction. See S.D. Const., Art. V, § 5. Because Judge Davis is acting within his subject matter jurisdiction, he is entitled to absolute judicial immunity. See Coleman v. Watt, 40 F.3d 255, 259 (8th Cir. 1994) (holding that because subject matter of state judge's action fell within the court's statutory grant of jurisdiction, the judge was entitled to judicial immunity). Dowty's claims against Judge Davis thus fail to state a claim upon which relief may be granted and are dismissed pursuant to 28 U.S.C. § 1915.

Nothing in the Constitution or the Fort Laramie Treaties gives Dowty a cause of action like what he seeks to bring. The Indian Commerce Clause is a grant of authority to Congress and not a provision that deprives states of all jurisdiction over Native Americans or child support cases involving Native Americans. Outside of Indian Country, states must have jurisdiction over Native Americans in such matters, as the federal courts generally do not and Native American children are just as entitled to the protection of laws for child support as would be African Americans, Latino Americans, Asian Americans, Caucasian Americans, or any other ethnic group. Dowty's Due Process claim and assertion of a lack of state jurisdiction invokes the 1868 Treaty of Ft. Laramie. Dowty does not specify what treaty rights he believes Defendants violated or how, other than that the State of South Dakota exercised jurisdiction over him. Cases alleging that the 1868 Treaty of Ft. Laramie deprives states of jurisdiction typically rely upon the "bad men" clause. The "bad men" clause provided that:

> If bad men among the Indians shall commit a wrong or depredation upon the person or property of any one, white, black, or Indian, subject to the authority of the United States, and at peace therewith, the Indians herein named solemnly agree that they will, upon proof made to their agent and notice by him, deliver up the wrong-doer to the United States, to be tried and punished according to its laws . . .

Art. I, paragraph 3, 1868 Treaty of Fort Laramie, 15. Stat. 635.

The 1868 Treaty of Fort Laramie was between the Sioux Nation and the United States. Dowty apparently was a defendant in South Dakota state court proceeding that involved child support obligations. The Defendants sued by Dowty are the State of South Dakota state officials and

employees. The State of South Dakota was not a party to the treaty and did not yet exist when the treaty was signed. It is true that much of the State of South Dakota once was part of the Great Sioux Reservation under the 1868 Treaty of Fort Laramie. For historical reasons, American Indians have reason to criticize federal government polices and laws that led to contraction of Indian country both before and following the 1868 Treaty of Fort Laramie. For legal reasons that control in this Court, the 1868 Treaty of Fort Laramie does not deprive state courts of jurisdiction in matters such as child support. See Rosebud Sioux Tribe v. Kneip, 430 U.S. 584, 614 (1977) (holding that Congress intended to diminish the boundaries of the Rosebud Sioux Indian Reservation and that a 1910 Act of Congress detached Mellette County from the Reservation); Major Crimes Act, 18 U.S.C. § 1153 (abrogating "bad men" clause of the Fort Laramie Treaty of 1868).

Dowty's first and third counts can be read as challenges to state authority over him generally, again based primarily on Dowty's misunderstanding of the Ft. Laramie Treaty of 1868. Dowty after all names the current attorney general and governor of the State of South Dakota, two people who were not in office when Dowty was made to pay child support but who are in office now that Dowty has been charged with criminal charges arising from the burglaries outside of what is considered "Indian Country" for federal court jurisdiction.

As this Court previously has ruled approximately four months prior to the time Dowty brought this action:

> This action challenging whether the state court and local law enforcement officers have jurisdiction over Dowty and Dowty's alleged crimes essentially is a premature 28 U.S.C. § 2254 attack on a state court conviction that does not yet exist. Dowty has not exhausted state judicial remedies by fairly presenting his jurisdictional challenge through to the highest state court that has power to consider his claim. 28 U.S.C. § 2254(b), (c); Anderson v. Harless, 459 U.S. 4 (1982); Picard v. Connor, 404 U.S. 270 (1971). Because the state conviction Dowty seeks to challenge does not yet exist, he lacks standing to pursue his claims under 28 U.S.C. § 2254. His jurisdictional claims are consequently dismissed as premature.

12-civ-3002-RAL, Doc. 6 at 2.

This case marks yet another attempt to sue a prosecuting attorney—this time Marty Jackley—as a defendant. See 11-civ-3025-RAL; (Doc. 11, dismissing claim against prosecutor Michael Strain); 12-civ-3002-RAL (Doc. 6, again dismissing claim against prosecutor). Because the burglary and the

shooting of one homeowner occurred outside of Indian Country, Dowty was not charged in federal court with burglary, aggravated assault, attempted murder, or similar charges. The charges in federal court concerned separate violations of federal law, ultimately resulting in Dowty's guilty plea to one count of felon in possession of firearm. Section 1983 does not permit a person awaiting trial on state charges to pursue a federal suit against a state prosecutor. Imbler v. Pachtman, 424 U.S. 409, 431 (1976) ("[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983."); Brodnicki v. City of Omaha, 75 F.3d 1261, 1266 (8th Cir. 1996), cert denied, 519 U.S. 867 (1996).

Dowty has filed several motions in this case. The first such motion is a request to proceed in forma pauperis. Doc. 2. The Prison Litigation Reform Act, 28 U.S.C. § 1915, requires prisoners to make an initial partial filing payment where possible. Determination of the partial filing fee is calculated according to 28 U.S.C. § 1915(b)(1), which requires 20 percent of the greater of: (a) the average monthly deposits to the prisoner's account; or (b) the average monthly balance in the prisoner's account for the six-month period immediately preceding the filing of the complaint or notice of appeal. Dowty's application represents that he has no funds whatsoever, including no funds in his inmate trust account. Under Section 1915(b)(4), no prisoner shall be prohibited from bringing a civil action by reason of the prisoner having no assets and no means to make an initial partial filing fee. However, Dowty will have to pay the entire $350.00 filing fee over the course of time, regardless of whether he obtains any relief from this action.

Dowty's motion to appoint counsel, Doc. 4, and motion for summary judgment, Doc. 7, are denied as his Complaint lacks merit and is subject to dismissal. This Court has been extraordinarily patient and accommodating to Dowty in dealing with his civil case filings. This case marks the fifth civil case filed by Dowty in the past year that has been dismissed upon initial screening. See 11-civ-5101-RAL, 12-civ-3002-RAL, 12-civ-3003-RAL, 12-civ-4016-RAL. Under 28 U.S.C. § 1915(g):

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

This Court has allowed Dowty to proceed in two cases, including one alleging deliberate indifference

7

to his serious medical needs. Dowty's pestering and peppering of the Court with frivolous civil filings justifies an order preventing Dowty from filing any new federal civil case, absent an order from a United States District Court Judge for the District of South Dakota allowing such a new filing. For good cause, it is hereby

ORDERED that Dowty's Motion to Proceed In Forma Pauperis, Doc. 2., is granted. It is further

ORDERED that the institution having custody of Dowty is hereby directed that whenever the amount in Dowty's trust account exceeds $10.00, monthly payments that equal 20 percent of the funds credited to the account the preceding month be forwarded to the United States District Court Clerk, 225 South Pierre Street, Pierre, South Dakota, 57501, pursuant to 28 U.S.C. § 1915(b)(2), until Dowty has paid the $350.00 filing fee in full. It is further

ORDERED that the motions filed by Dowty as Doc. 4 and 7 are denied. It is further

ORDERED that Dowty's claims are dismissed under screening of 28 U.S.C. § 1915A as non-meritorious and frivolous. It is finally

ORDERED that, under 28 U.S.C. § 1915(g), Dowty, unless in "imminent danger of serious physical injury," may not file any new federal civil case absent paying the filing fee in full and that the Deputy Clerk of Court for the Central Division alert all other divisions of the District of South Dakota and all judges of the entry of this Order so barring new federal case filing from Dowty.

Dated August 1, 2012.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE